## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| TREMMEL BROADWATER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | NO. 2:04-CV-307 |
| | ) | (2:01-CR-15) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPIONION AND ORDER

This matter is before the Court on the Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody, filed by Petitioner on August 9, 2004.  For the reasons set forth below, the section 2255 motion is **DENIED**.  The Clerk is **ORDERED to DISMISS** this case **WITH PREJUDICE**.  The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Prisoner No. 06590-027) at the FCI - Pekin, P.O. Box 5000, in Pekin, Illinois 61555-5000, or to such other more current address that may be on file for the Petitioner.


BACKGROUND

Following a 4-day trial, pro se Petitioner, Tremmel Broadwater, was convicted by a jury on three counts.  Counts 1 and 2 charged Broadwater with the distribution of more than 50 grams of crack

cocaine on January 8, 2001, and January 12, 2001.  Count 3 charged him with possession with intent to distribute in excess of 50 grams of crack cocaine on January 22, 2001.  After a sentencing hearing on May 20, 2002, Broadwater was sentenced to a term of imprisonnment of 300 months.  Broadwater filed a direct appeal, and his conviction and sentence was affirmed on appeal by the Seventh Circuit.  The Seventh Circuit's mandate was issued on June 23, 2003.  Broadwater did not file a petition for a writ of certiorari.

In accordance with *Clay v. United States*, 537 U.S. 522 (2003), Broadwater timely filed this section 2255 motion on August 9, 2004. The facts surrounding Broadwater's offenses are set forth in the Seventh Circuit's unpublished order, and are recited herein as follows:

In December 2000, an anonymous female informant provided information to the Drug Enforcement Agency ("DEA") that Broadwater was involved with drug activity.  DEA Agent Eric Lee opened an investigation, and began an attempt to make an undercover drug buy from Broadwater.  Lee instructed the informant to introduce Lee to Broadwater as the informant's "Uncle Toon" and to ask him if he could get her "uncle" two ounces of cocaine.

On January 2, 2001, Agent Lee spoke with Broadwater and set the price for two ounces of cocaine.  On January 8, Lee met Broadwater and purchased 49.3 grams of crack cocaine from him.  Lee called Broadwater again on January 12, 2001, to conduct a second transaction.

Broadwater sold Agent Lee 121.3 grams of crack cocaine that day.  The third and final transaction was initiated by Lee on January 19, 2001, and conducted three days later at a local restaurant.  Immediately after this transaction, the authorities from the East Chicago, Indiana police department who had been observing the buy stopped Broadwater's car and recovered 150.6 grams of crack cocaine from the trunk of the car.  Broadwater was then arrested.

At trial, Broadwater asserted the defense of entrapment.  It is well-established that defendants raising an entrapment defense must produce evidence of their own lack of predisposition as well as inducement by the Government.  *See, e.g., United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999).  Broadwater testified that he would not have sold Agent Lee the cocaine but for a promise – made by the female confidential informant – that if Broadwater sold cocaine to her "Uncle Toon," she would arrange for a three-way sexual encounter between herself, her cousin, and Broadwater.

To counter Broadwater's entrapment defense, the Government sought to attack Broadwater's credibility.  Thus, on cross-examination, the Government asked Broadwater about his two prior felony convictions: one for possession of an unauthorized weapon in 1993, and another conviction for the same offense in 1995.  To establish further evidence that Broadwater was not entrapped, the Government called a rebuttal witness, Shawn Sartin, who testified that he had purchased crack cocaine from Broadwater on several occasions, beginning in 1998

and continuing until Sartin's arrest in July 2000. Sartin also testified that these occasions usually took place in front of a liquor store on the south side of Chicago, and generally involved two to three ounces of crack cocaine at a time. The jury found Broadwater guilty on all three drug counts.

At sentencing, the Court enhanced Broadwater's offense by two levels for obstruction of justice as a result of his perjured trial testimony. The trial judge specifically stated he found the Defendant's testimony "that he had not sold drugs before" was "not credible" and that "this testimony was relevant and material to the issues of fact in this case." The Judge concluded: "The Court finds that the Defendant's testimony was not only not credible, that it was perjurious and that he had, in fact, perjured himself during this time." Broadwater was then sentenced to a 300-month term of imprisonment.

Broadwater's section 2255 motion alleges three grounds of constitutionally ineffective assistance by his trial counsel. First, Broadwater argues that, but for the ineffective assistance of his counsel, he would have accepted the plea agreement offered by the Government. Broadwater also argues that his counsel was ineffective because he failed to properly investigate and failed to call certain witnesses at trial. Finally, Broadwater contends that his sentence is invalid under *Blakely v. Washington*, 542 U.S. 296 (2004).

DISCUSSION

Relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; see also Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir.

-5-

1996).

In assessing Petitioner's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).  In other words:

> The mandated liberal construction afforded to pro
> se pleadings "means that if the court can
> reasonably read the pleadings to state a valid
> claim on which the [petitioner] could prevail, it
> should do so despite the [petitioner's] failure
> to cite proper legal authority, his confusion of
> various legal theories, his poor syntax and
> sentence construction, or his unfamiliarity with
> pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'"  *Id*.  Here, the Court

-6-

assessed Petitioner's claims with those guidelines in mind.


Ineffective Assistance of Counsel - Alleged Miscalculation
of Possible Sentence

     Broadwater claims that his counsel did not accurately advise him
of his potential sentence if he proceeded to trial and was convicted.
He asserts that had his attorney advised him of the proper potential
sentence following a jury trial, he would have accepted a plea
agreement.

     Plea negotiations occurred as follows.  Broadwater recalls that
the first plea agreement offered by the prosecution was dismissal of
Counts 2 and 3 in exchange for a guilty plea on Count 1.  (Broadwater
Aff. ¶ 2.)  When Broadwater learned that the drug amounts in Counts
2 and 3 would be included as relevant conduct for the purpose of
sentencing, he "did not believe this agreement was much of a deal,"
and he rejected the plea.  (2255 Pet., p. 9; Broadwater Aff. ¶ 2.)
The Government does not contest any facts relating to the first offer,
and plea negotiations continued.

     The Government then offered a plea agreement that would include
a one-level departure from the guidelines for cooperation, a three
level departure for acceptance of responsibility, and a recommendation
for a sentence at the bottom of the guidelines.  In response to
questions Broadwater posed to his trial attorney several years after
the conclusion of the trial, H. Jay Stevens wrote Broadwater a letter
dated May 26, 2004.  (*See* Stevens' letter, attached to 2255 Pet. as

-7-

Ex. B.)  In that letter, Stevens said he recalled that this plea would have resulted in an adjusted offense level of 30, and if Broadwater's criminal history was a category II, the bottom of the guideline range would have been 108 months, or 9 years.  (Stevens' letter, p. 2.) Both Broadwater and his counsel agree that the prosecutor was not able to get approval for the one level departure for cooperation. (Broadwater Aff. ¶ 3; Stevens' letter, p. 2.)   Therefore, the final offer on the table from the Government included no departure for cooperation, an adjusted offense level of 31, and Broadwater's counsel believed his guideline sentence would have been 121 months, or 10 years.  (Stevens' letter, pp. 2-3; Broadwater Aff. ¶ 4.)  Broadwater claims he requested a "cap" on the 10-year plea, which the Government denied.  (Broadwater Aff. ¶ 4.)

From this point on, certain of the facts become contested. Broadwater believes he talked to his counsel before proceeding to trial, and his counsel told him there would be no more continuances for plea negotiations, and that Broadwater needed to make a decision whether he wished to go to trial.  (Broadwater Aff. ¶ 5.)  Broadwater asked counsel what he believed Broadwater's sentence would be if he went to trial and lost, and Broadwater claims his counsel responded "I guess around 12 to 13 years."  (Broadwater Aff. ¶ 5.)   Thus, Broadwater attests he thought he was only risking 2 to 3 years by going to trial, so he proceeded to trial.  (Broadwater Aff. ¶ 6.) Broadwater does recall counsel advising him that an entrapment defense

-8-

was "very thin and rarely won;" however, he claims defense counsel also told him that he had "a fifty-fifty chance of winning at trial." (Broadwater Aff. ¶ 9.)

Trial counsel does not have a good recollection of the events at issue, and he lacks written notes, but believes that "[a] statement that you would not get more that 13 years following trial, however, would certainly strike me as highly unusual." (Stevens' letter, p. 2.) Rather, trial counsel believes he would have estimated a sentence of about 16 years. (Stevens' letter, p. 3.) Also, trial counsel states that Broadwater rejected both of the last two offers "out of hand," because he "did not want to plead unless [he] could be released to work on the outside and attempt to earn a further downward departure, something the government refused to do." (Stevens' letter, p. 3.) Stevens contends that unless Broadwater could work undercover to earn additional cooperation points, he was "going to trial, regardless of the consequences." (Stevens' letter, p. 3.)

Of course, Broadwater received a sentence of 25 years. Trial counsel states that:

> A sentence of 25 years is indeed a harsh sentence in this case. It is certainly greater than I expected, and, and I am sure, substantially greater than I probably predicted for you. There is no question, however, that I advised you that the chance of success at trial was almost non-existent, and that your sentence following trial would be far greater than if you pled guilty. I recommended that you take the plea, and your rejection of that recommendation resulted in, as I predicted, a far greater sentence.

(Stevens' letter, p. 3.)  Trial counsel believes that the difference in his 16 year prediction and Broadwater's actual sentence of 25 years was the enhancement for obstruction of justice and the determination that Broadwater's criminal history was a category IV instead of category II.  (Stevens' letter p. 3.)  Broadwater does not dispute this conclusion, but argues that counsel should have anticipated an enhancement for obstruction of justice and should have been informed about his criminal history.

Claims of ineffective assistance of counsel are governed by the 2-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  To prevail on an ineffective assistance of counsel claim, the Defendant must first show the specific acts or omissions of his attorney "fell below an objective standard of reasonableness" and were "outside the wide range of professionally competent assistance." *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) (quoting *Strickland*, 466 U.S. at 688, 690); *see also Hardamon v. United States*, 319 F.3d 943, 948 (7th Cir. 2003); *Anderson v. Sternes*, 243 F.3d 1049, 1057 (7th Cir. 2001).

The second *Strickland* prong requires the Defendant to show prejudice, which entails showing by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,  466 U.S. at 694.

Regarding the deficient-performance prong, great deference is given to counsel's performance and the Defendant has a heavy burden

to overcome the strong presumption of effective performance. *Strickland*, 466 U.S. at 690; *Coleman v. United States*, 318 F.3d 754, 758 (7th Cir. 2003) (citation omitted).  Defendant must establish specific acts or admissions to fall below professional norms. *Strickland*, 466 U.S. at 690. As to the prejudice requirement, it must be shown "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998) (citing *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991); *Johnson v. Duckworth*, 793 F.2d 898, 902 n.3 (7th Cir. 1986)).  If one prong is not satisfied, it is unnecessary to reach the merits of the second prong. *See Strickland*, 466 U.S. at 697.

A criminal defendant "has a right to effective assistance of counsel in deciding whether to accept or reject a proposed plea agreement." *Toro*, 940 F.2d at 1067 (citing *Johnson*, 793 F.2d at 900-02).  Assuming that all of Broadwater's allegations are true (including assuming that his defense counsel forecasted a sentence of 12-13 years after trial, and advised Broadwater that he had a 50% chance of winning at trial), this Court first addresses whether trial counsel performed inadequately.  The Seventh Circuit has established that:

> A defense attorney cannot promise his client a
> particular sentence; all he can do is make a
> prediction . . .  In this circuit, an attorney's
> 'mere inaccurate prediction of a sentence' does

> not demonstrate the deficiency component of an
> ineffective assistance of counsel claim.

*United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999) (quoting *United States v. Barnes*, 83 F.3d 934, 940 (7th Cir. 1996)); *see also United States v. Arvanitis*, 902 F.2d 489, 494 (7th Cir. 1990). Sentence predictions must be grossly in error to even represent a possibility of satisfying the deficient performance prong of an ineffective assistance of counsel claim. *Barnes*, 83 F.3d at 940.

Importantly, beyond showing deficient performance, a defendant still has to provide sufficient proof that "his attorney did not make a good-faith effort to discover the facts relevant to his sentencing, to analyze those facts in terms of the applicable legal principles and to discuss that analysis with him." *Id.*; *see also Martinez*, 169 F.3d at 1053. In other words, in the plea bargaining context, a defendant must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005). "Thus, the question is whether these were 'mere inaccurate predictions' or whether they were something more invidious." *Martinez*, 169 F.3d at 1053.

As the Seventh Circuit noted in *Cieslowski*, the standard is "stringent," as one can see by reviewing cases in this circuit which it has not been met. *Cieslowski,* 410 F.3d at 359. In *Barnes*,

counsel's failure to recognize that a past conviction qualified the defendant as a career offender was insufficient to show deficient performance.  *Barnes*, 83 F.3d at 940.  Failure to recognize basic issues of federal and state jurisdiction did not amount to deficient performance in *United States v. Teller*, 762 F.2d 569, 577 (7th Cir. 1985).  In *Martinez*, counsel failed to inform the defendant both that he was not eligible for boot camp and that his gun possession conviction carried a minimum additional sentence of five years' incarceration, but his performance was not judged deficient.  *Martinez*, 169 F.3d at 1053.  Finally, in *Cieslowski*, the Court found that defense counsel's failure to take into account an amendment to the Sentencing Guidelines did not amount to deficient performance.  410 F.3d at 359.

   *Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001), cited by Broadwater, is distinguishable.  That case hinged not on whether the attorney's performance was inadequate, but whether the defendant established prejudice.  In *Magana*, the courts conceded that counsel's "complete ignorance of the relevant law under which his client was charged, and his consequent gross misadvise to his client regarding the client's potential prison sentence, certainly fell below an objective standard of reasonableness under prevailing professional norms."  *Id.* at 550.  In this case, the Government contends that Broadwater's counsel acted well within an objective standard of reasonableness in advising his client.  Anther case cited by Defendant

-13-

in which an attorney's conduct was found deficient involved much more egregious circumstances than those present here. *See Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999) (attorney's ignorance of statutory sentencing amendment). Finally, other cases cited by Defendant, including *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), fail to recognize the Seventh Circuit's requirement that a "miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000) (citing *United States v. Gwiazdzinski, 141 F.3d 784, 790 (7th Cir. 1998); Barnes*, 83 F.3d at 939-40).

Turning to the facts in this case, the Court finds that Broadwater's counsel was not deficient. Trial counsel determined Broadwater's criminal history based upon the information provided to him by Broadwater (Stevens' letter, p. 2), and it is clear that counsel and his client had continuing communications throughout the plea negotiation process. Although Broadwater claims that his counsel should have further investigated his criminal history, or should have known about the other convictions, Broadwater does not allege that the actions of his counsel were invidious, or in bad faith. *See Bridgeman*, 229 F.3d at 592 (finding no deficient performance where defendant "failed to allege facts demonstrating that his counsel's

-14-

prediction was not undertaken in good faith.").  With regard to the eventual sentencing enhancement for obstruction of justice, this enhancement was the result of the trial court finding that Broadwater committed perjury at trial.  (Sent. Tr. dated May 20, 2002, at 13.) The Court does not believe that defense counsel should have predicted his client's perjured testimony.  In sum, this Court concludes, like the *Martinez* court, that "[t]o rise to a constitutional violation, there must be greater evidence than there is here of the attorney's lack of a good-faith effort to discover and analyze relevant facts and discuss them with the client." *Martinez*, 169 F.3d at 1053.

Even assuming, *arguendo*, that the mistaken calculation amounted to deficient performance because of the significant difference between counsel's prediction and Broadwater's actual sentence, Broadwater has also failed to satisfy the prejudice requirement under *Strickland*.

If it is alleged ineffective assistance is given by counsel during plea bargaining, prejudice can be established by showing "a reasonable probability that, if not for counsel's errors, defendant would have obtained and accepted a more favorable plea offer." *United States v. Warren,* No. 03 C 3574, 2003 WL 22232751, at *1 (N.D. Ill. Sept. 22, 2003) (citing *Paters*, 159 F.3d at 1047); *Toro*, 940 F.2d at 1068; *Golden v. United States*, 35 F. Supp. 2d 664, 668 (N.D. Ind. 1999)).  "Objective evidence requires something more than defendant's representation that he would have accepted a plea had he received different advice." *Warren*, 2003 WL 22232751, at *1 (citing *Paters*,

-15-

159 F.3d at 1046-47); *Johnson*, 793 F.2d at 902, n.3; *Sams v. Chrans*, 165 F. Supp. 2d 756, 760-61 (N.D. Ill. 2001) ("This requires, at least in part, objective evidence that [defendant] would not have accepted the plea offer"); *Nelson v. United States*, 22 F. Supp. 2d 860, 864 (C.D. Ill. 1998)); *see also United States v. Ramos*, No. 96 CR 815, 1998 WL 214737, at *5 (N.D. Ill. April 27, 1998); *United States v. Chiapetta*, No. 03 C 2886, 2003 WL 22071478, at *4 (N.D. Ill. Sept. 4, 2003) (citing *United States v. Fudge*, 325 F.3d 910, 923 (7th Cir. 2003) (other citations omitted)).

In *Toro*, the Seventh Circuit held there must be objective evidence accompanying a section 2255 motion to establish prejudice under the *Strickland* test. *Toro*, 940 F.2d at 1068. Toro's memorandum stated he "would have to have been insane not to accept the plea agreement for the minimum sentence" had he been given proper information. *Id.* This was merely a self-serving statement and not the type of objective evidence needed to establish "that, but for counsel's advice, there [was] a reasonable probability that he would have accepted the plea." *Id.* (citing *Johnson*, 793 F.2d at 902, n.3) ("Under these circumstances, we seriously doubt whether [defendant's] after-the-fact testimony regarding his wishes in and of itself would be sufficient to establish that prior to trial, but for [his attorney's] actions, there was a reasonable probability he would have accepted the plea agreement.").

In *Paters*, the Seventh Circuit again discussed the "objective

evidence rule" under the prejudice prong of the *Strickland* test. *Paters*, 159 F.3d at 1045-46. Paters signed a "declaration," which he attached to his section 2255 motion, claiming that had his counsel given appropriate advice, he would have accepted the plea agreement. *Id.* at 1044-45. The Court elaborated on the "*Toro* test," which requires, in order to establish prejudice based on turning down a plea agreement because of alleged ineffective counsel, the petitioner to establish "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Id.* at 1046 (citing *Toro*, 940 F.2d at 1068; *Johnson*, 793 F.2d at 902 n.3).

The *Paters* Court first stated that Paters met the second prong of the test by alleging it was reasonably probable he would have accepted the plea bargain but for his counsel's inadequate performance. *Id.* at 1047 (noting the petitioner had stated "[u]nder more befitting legal guidance, I am certain that I would have been amenable to conditions of the plea bargain."). However, the Court held there was no objective evidence showing there was a reasonable probability that he would have accepted the plea deal but for his attorney's advice. *Id.* Paters' parents had also signed affidavits attesting to the fact they attended pre-offer conferences in which Paters' counsel misjudged his maximum sentence and incorrectly informed Paters. *Id.* (noting the affidavits from his parents did not reflect the parents' personal knowledge and merely related the

-17-

allegations of Paters). The Court declared "[s]uch tenuous assertions fall short of being objective evidence." *Id.* at 1047 n.5. The Court stated it was plausible for a defendant to offer an affidavit from defense counsel to prove they would have accepted the plea bargain. *Id.* at 1047 n.6.

In this case, although Broadwater attests that he would have accepted the last plea offer absent his defense counsel's incorrect prediction, he fails to satisfy the prejudice requirement of *Toro*, because there is no objective evidence showing that there is a reasonable probability that Broadwater would have accepted the plea deal but for his attorney's advice. In support of his motion, Broadwater submitted his own affidavit, and 6 other affidavits (submitted from his mother, an aunt, two other relatives, and two friends (*See* 2255 Pet. Exs. C-H).) Broadwater states that, based upon his attorney's advise, he "was under the impression [he] was only risking a 2 to 3 year difference by going to trial instead of pleading guilty. So [he] decided to proceed with trial." (Broadwater Aff. ¶ 6.) He also states his "intentions throughout the proceedings was to get a fair plea agreement and avoid a trial." (Broadwater Aff. ¶ 8.) Broadwater's mother states that through discussions with her son, she learned he proceeded to trial solely because of his belief that he would only lose 2 to 3 years if he lost at trial. (Charlene Broadwater Aff. ¶ 8.) Additionally, his mother contends "[t]hat I believe Tremmel would have accepted the plea agreement had he known

the actual amount of time he faced if he lost at trial." (Charlene Broadwater Aff. ¶ 9.)   Similarly, Broadwater's family members and friends attest that, based upon discussions either with Broadwater or his mother, they believe he would have entered into the plea agreement had Broadwater been properly apprised of the true potential term of imprisonment.

The instant case is similar to *Paters*, in which the defendant's parents submitted affidavits stating they personally attended pre-plea offer conferences in which defense counsel said that Paters' sentence could not exceed 5 years.  *Paters*, 159 F.3d at 1047.  The affidavits also suggested that *Paters* received a plea offer and seriously considered it.  *Id.* at 1047 n. 5.  The Seventh Circuit found that "such tenuous assertions fall short of being objective evidence." *Id.* Further, it suggested that "one way for Paters to establish his reaction to the plea would be to submit an affidavit from defense counsel," or from the U.S. Attorney.  *Id.* at 1047 n.6.

Similarly, this Court finds that Broadwater's self serving assertions, and those of his friends and family, do not constitute objective evidence that Broadwater would have accepted the plea bargain but for his counsel's incorrect forecast of his potential sentence after trial.  The statements do not present actual knowledge on the part of his mother and friends, but rather they merely relate the naked allegations of Broadwater himself.  This is especially so in light of defense counsel's letter in which he states that

-19-

Broadwater rejected both of the last two offers "out of hand," because he "did not want to plead unless [he] could be released to work on the outside and attempt to earn a further downward departure, something the government refused to do."  (Stevens' letter, p. 3.)

Broadwater cites to *United States v. Day* for the proposition that his counsel's ineffective assistance during the plea bargain process violates the Sixth Amendment.  *See* 969 F.2d 39, 41-43 (3d Cir. 1992). *Day* involved a defense counsel's alleged misrepresentation of the Federal Sentencing Guidelines.  *Id.* at 41.  The court remanded the case for an evidentiary hearing, noting that if defense counsel confirmed his allegations, then he may be able to prove prejudice. However, the *Day* court also noted "[t]he Seventh Circuit . . . adopted as a holding a requirement of some 'objective evidence' that a petitioner would have accepted a plea offer.  Other circuits have demanded likewise.  We need not decide whether to impose a requirement of some additional evidence here . . . ."  *Id.* at 45 (citations omitted).  Thus, the *Day* opinion expressly distinguishes itself from the present case.

To summarize, Broadwater has failed to present objective evidence showing there was a reasonable probability that, but for counsel's inaccurate prediction, he would have accepted the plea deal.

Ineffective Assistance of Counsel - Failure to
Investigate And Call To Trial Certain Witnesses

Broadwater also claims that his trial counsel committed

-20-

constitutionally ineffective assistance of counsel when he failed to investigate the confidential informant and Monica Sartin, and when counsel failed to call these witnesses to trial.  In response, the Government argues that defense counsel's trial strategy to omit these witnesses from trial was sound.

Failure to investigate can sometimes be so egregious as to support an ineffective assistance of counsel claim.  See United *States v. Gray*, 878 F.2d 702, 711-12 (3d Cir. 1989).  However, defense counsel need not "track down every lead or . . . personally investigate every evidentiary possibility before choosing a defense and developing it."  *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987).

Acts or omissions that may be classified as trial tactics cannot be considered by the court in an ineffective assistance of counsel claim.  *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (ruling that the *Strickland* test is "highly deferential" to counsel, "presuming reasonable judgment and declining to second guess strategic choices."); *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994); *United States v. Limehouse*, 950 F.2d 501, 504 (7th Cir. 1991) ("[t]rial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim."); *United States v. Balzano*, 916 F.2d 1273, 1294-95 (7th Cir. 1990) (strategic decisions are virtually unchallengeable); *Williams v. McVicar,*, 918 F. Supp. 1226, 1233-34 (N.D. Ill. 1996) (ruling that trial strategy is not a viable

subject for review by the court).

<u>Confidential Informant</u>

Broadwater's counsel described in his letter why he did not investigate or call the confidential informant at trial. Defense counsel explained that "[t]he confidential informant, as we knew, was working to make cases to help another individual reduce his sentence. She was obviously no friend to your case, and if there was some other way to get the evidence in [for your entrapment defense], that would be preferable." (Stevens' letter, p. 1.) Counsel decided that, because the confidential informant allegedly promised Broadwater to have sexual relations with her and her cousin, that the cousin, Laura McNair, could testify and adequately present Broadwater's defense. (*Id.*, p. 2.)

The decision not to interview the confidential informant was not clearly outside the range of professionally competent assistance. *See United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) (citing *Sullivan*, 819 F.2d at 1391) ("A defense attorney is not obligated to track down each and every possible witness or to personally investigate every conceivable lead."). Moreover, Broadwater has failed to demonstrate any alleged prejudice that resulted from his attorney's failure to interview the confidential informant.

Finally, the decision not to call the confidential informant as a witness at trial is a trial strategy and should not be second

-22-

guessed.  *See*, *e.g.*, *Balzano*, 916 F.2d 1294-95.  Even if the Court were to analyze the appropriateness of these tactics, the decision not to call a witness aligned with the Government who could provide damaging testimony to his client was not clearly outside the range of a professionally competent attorney.

Monica Sartin

Broadwater also alleges that his attorney should have investigated Monica Sartin, and called her to the witness stand. Broadwater claims that while being transported to the courthouse on the first day of trial, he had a conversation with Monica Sartin, who was also in custody. (Broadwater Aff. ¶ 10.)  Monica Sartin allegedly told Broadwater that the prosecution asked her to testify in exchange for a reduction of her sentence, but she refused because she had not engaged in any drug transactions with Broadwater. (*Id.*)  Counsel explained that he did not call Monica Sartin to testify at trial because "[t]he fact that she saw nothing certainly would not be proof that you were not involved in drug deals." (Stevens' letter, p. 3.) Further, counsel feared her testimony would be damaging if she attempted to help Shawn Sartin, who did testify as a Government rebuttal witness at trial. (*Id.*, p 4.)

As with the confidential informant, this Court finds that trial counsel did not provide objectively unreasonable representation when he failed to investigate Monica Sartin and failed to call her to the

stand.   In reviewing the actions of defense counsel, the Court
presumes that "the challenged action might be considered sound trial
strategy." *Strickland*, 466 U.S. at 690.  Broadwater does not allege
any facts which would overcome this presumption.


Whether Petitioner's Sentence Violated Blakely

Broadwater claims that the imposition of the obstruction of
justice enhancement, delivered by the trial judge following the jury
trial, violates *Blakely v. Washington*, 542 U.S. 296 (2004), because
the enhancement was based upon a fact neither charged nor determined
by the jury.  In *Clay v. United States*, 537 U.S. 522 (2003), the
Supreme Court held that a judgment on a conviction becomes final when
the time expires for filing a petition for certiorari, even if the
defendant does not file a petition for certiorari (as in this case).
Here, the Seventh Circuit issued its mandate on June 23, 2003; thus,
Broadwater's underlying criminal case became final 69 days later, on
August 31, 2003.

Because Broadwater's underlying criminal case has long been
"final," he cannot pursue a *Blakely/Booker* claim until and unless the
Supreme Court makes such claims retroactive to cases on collateral
review.  *In Re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004).  Until
then, *Blakely/Booker* claims are not cognizable in section 2255
proceedings.  The Seventh Circuit Court of Appeals recently concluded
that "Booker does not apply retroactively to criminal cases that

became final before its release on January 12, 2005." *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005); *see also Garcia v. United States*, No. 04-CV-0465, 2004 WL 1752588, at *5-*7 (N.D.N.Y. August 4, 2004) (conducting *Teague* analysis and concluding *Blakely* does not apply retroactively to section 2255 motions).  However, in the unlikely event the Supreme Court makes such claims retroactively applicable to cases on collateral review, Broadwater will be able to attempt to pursue such claims by filing a successive 2255 motion.  *See Simpson v. United States*, 376 F.3d 679, 682 (7th Cir. 2004) (advising would-be section 2255 petitioner to file successive section 2255 motion if Supreme Court makes *Blakely* retroactive to cases on collateral review).

Evidentiary Hearing

    Broadwater requested an evidentiary hearing to be held in this matter.  An evidentiary hearing need not be held for every section 2255 motion.  *Liss v. United States*, 915 F.2d 287, 290 (7th Cir. 1990).  "No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court."  *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (citation omitted).  Because of his or her familiarity with the evidence presented at trial, the presiding judge is uniquely

-25-

suited to determine whether a hearing on a section 2255 motion is necessary. *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989).

Here, taking the facts as alleged by Broadwater in his affidavit as true, the Court has still concluded that his claims for ineffective assistance of counsel fail. First, defense counsel's miscalucation of Broadwater's potential sentence following a trial did not rise to the level of constitutionally ineffective assistance of counsel because there was no evidence that counsel acted in bad faith or was invidious. Second, the Court found that Broadwater failed to produce objective evidence that absent his attorney's prediction, he would have, in fact, accepted the plea. Because the Court finds that Broadwater has not raised a cognizable claim in his section 2255 petition, he is not entitled to a hearing.

CONCLUSION

For the aforementioned reasons, the Court **DENIES** the Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody. The Clerk is **ORDERED to DISMISS** this case **WITH PREJUDICE**. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Petitioner (Prisoner No. 06590-027) at the FCI -

Pekin, P.O. Box 5000, in Pekin, Illinois 61555-5000, or to such other

more current address that may be on file for the Petitioner.


DATED:  July 21, 2005                S/RUDY LOZANO, Judge
                                       United States District Court